UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Melissa F. Shepard,

    Plaintiff,

v.                                                                                                  Civil Action No. 5:10-CV-323

Michael J. Astrue, Commissioner of
Social Security Administration,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 10, 17)

      Plaintiff Melissa F. Shepard brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Shepard's motion seeking an order reversing the Commissioner's decision (Doc. 10), and the Commissioner's motion seeking an order affirming the same (Doc. 17). For the reasons stated below, I recommend that the Court grant Shepard's motion to reverse, in part; and deny the Commissioner's motion to affirm.

## Background

      Shepard was forty-three years old on her alleged disability onset date of July 23, 2007. (Administrative Record ("AR") 28, 126, 168.) She is educated through the ninth grade, and has worked as a cashier at Wal-Mart, a cashier at a gas station, and a cleaner at a hotel. (AR 29, 156-61, 169, 173.) In addition, since 2001, she has worked

approximately sixteen-to-twenty hours per week, in a flexible schedule, as a personal care assistant for elderly individuals. (AR 29, 34, 156, 160-61, 169, 184.) Shepard testified that, as a child, she could not function in a normal school setting because of severe anxiety and social phobias, and thus was placed in a program for girls with special needs. (AR 32-33.) She further testified that she has attempted suicide on multiple occasions, and generally tends to stay home "where [she] feel[s] safe," as a result of her anxiety and phobias. (AR 31-33.) Shepard has a fear of medicine, which she relates to her history of heavy drug and alcohol use as an adolescent and young adult; and thus she has consistently refused to take medications recommended by her doctors to treat her mental health symptoms. (AR 33, 150, 168, 296.)

On May 31, 2007, Shepard filed an application for disability insurance benefits ("DIB"); and on July 23, 2007, she filed a corresponding application for supplemental security income ("SSI"). (AR 45, 46, 117-27.) Pursuant to the DIB application, Shepard alleged that, starting on July 23, 2007, she became unable to work due to anxiety, multiple phobias, "bad feet," and problems with breathing. (AR 168.) Her DIB and SSI applications were denied initially and upon reconsideration. (AR 48-61.) Shepard timely requested an administrative hearing, which was held on June 4, 2010. (AR 25-44.) Shepard testified at the hearing, and was represented by counsel. (*Id.*) Additionally, Vocational Expert ("VE") Cynthia Ward testified at the hearing. (AR 38-43.) On July 16, 2010, Administrative Law Judge ("ALJ") Thomas Merrill issued a decision finding that Shepard was not disabled under the Social Security Act. (AR 11-19.) The Decision Review Board failed to consider the ALJ's determination within the time required by law,

thus rendering it the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Shepard timely filed her Complaint with this Court on December 27, 2010. (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national

3

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Merrill first determined that Shepard had engaged in substantial gainful activity from July through December of 2007, April through June of 2008, and October through December of 2008. (AR 13.) The ALJ explained thatShepard's earnings "exceed the level of substantial gainful activity for the second half of 2007, and the second and fourth quarters of 2008." (*Id.*) Despite these earnings, however, the ALJ proceeded to the next step in the sequential evaluation process and "considered the medical evidence from the entire relevant period." (AR 13-14.) At step two, the ALJ found that Shepard suffered from the severe impairment of "anxiety disorders," but that the following alleged impairments were not severe: gastroesophageal reflux disease, attention deficit hyperactivity disorder, lateral epicondylitis (also known as "tennis elbow," *see* STEDMAN'S MEDICAL DICTIONARY 653 (28th ed. 2006)), bilateral plantar fasciitis (defined as "inflammation of the plantar fascia, . . . elicit[ing] foot and heal pain," *id.* at 706), constipation, and migraines. (AR 14.) At step three, the ALJ determined that Shepard's impairments did not meet or medically equal a listed impairment. (*Id.*)

Next, the ALJ found that Shepard retained the RFC to perform "a full range of work at all exertional levels," but was mildly limited regarding understanding, remembering, carrying out, and making decisions on simple tasks; moderately limited

4

regarding understanding, remembering, carrying out, and making decisions on complex instructions; mildly limited in her ability to interact appropriately with the public, supervisors, and coworkers; and mildly limited in her ability to respond to work situations and changes in the routine work setting. (AR 15.) At step four, the ALJ found that, considering this RFC, Shepard could perform her past relevant work as a "companion/personal care assistant," and thus was not under a disability from July 23, 2007 through the date of the decision. (AR 18-19.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual

review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Shepard claims the ALJ erred in determining that her earnings as a personal care assistant constituted substantial gainful activity ("SGA"). Her argument is threefold. First, she contends that the ALJ should have calculated her monthly earnings on a yearly basis, rather than quarterly. Second, she claims that her personal care assistant work was done under "special circumstances," and thus could not have constituted SGA. Third, she contends that the ALJ should have developed her earnings record prior to the hearing,

6

and that the ALJ's final determination that she was not disabled was "heavily influenced" by her incomplete earnings record and by the ALJ's improper determination that she had engaged in SGA. (Doc. 10-1 at 19.) For the foregoing reasons, I am persuaded by Shepard's claims and recommend remanding for a new decision on whether Shepard engaged in SGA during the alleged disability period.

I.      **The ALJ's Calculation of Shepard's Earnings Was Improper, and the ALJ Should Have Made Efforts to Develop Her Earnings Record before Determining that Shepard Engaged in Substantial Gainful Activity.**

Shepard argues that the ALJ erred in calculating her earnings on a quarterly rather than yearly basis. At step one of the sequential evaluation, the ALJ determines whether a claimant is engaging in SGA. If so, the claim is denied, regardless of medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b). In determining whether the work a claimant has done shows that he or she is able to do SGA, the regulations provide that if a claimant has worked for "substantial earnings," it will be presumed that he or she can perform SGA. *See* 20 C.F.R. § 404.1574(a)(1) ("Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity."). In calculating a claimant's earnings, the applicable regulation provides that the ALJ will "average [the] earnings *over the entire period of work* requiring evaluation." 20 C.F.R. § 404.1574a(a) (emphasis added). Courts and the Social Security Administration ("SSA") have interpreted this to mean that the ALJ must "average the wages earned by the [claimant] *over the time employed* to determine whether during that time the applicant was capable of substantial gainful activity." *Anderson v. Heckler*, 726 F.2d 455, 457 (8th Cir. 1984); SSR 85-5C, 1985 WL 56864, at *3 (1985) (emphasis added). Additionally,

7

the regulations require that, when (as here) a claimant works over a period of time during which the SGA earnings levels change in accordance with the applicable SSA guideline tables, the ALJ "will average [the claimant's] earnings separately for each period in which a different substantial gainful activity earnings level applies." 20 C.F.R. § 404.1574a(b).

In Shepard's case, "the entire period of work requiring evaluation, " 20 C.F.R. § 404.1574a(a), spanned the complete alleged disability period, approximately from July 2007 through July 2010. (*See* Doc. 10 at 11 ("Shepard has been employed *since 2001* as a part-time personal care assistant for the elderly and disabled.") (emphasis added).) Nonetheless, in determining that Shepard had engaged in SGA, the ALJ relied exclusively on Shepard's earnings during "the second half of 2007, and the second and fourth quarters of 2008." (AR 13.) In defense of the ALJ's method of calculation, the Commissioner cites to 20 C.F.R. § 416.974a(c) (*see* Doc. 17 at 10), which provides that, where there is a "*significant change*" in the claimant's work pattern or earnings during the period of work requiring evaluation, the ALJ "will average [the claimant's] earnings *over each separate period of work* to determine if any of [his or her] work efforts were substantial gainful activity." (Emphases added.) *See also* Programs Operations Manual System ("POMS") DI 10505.015 ("Generally, countable earnings are averaged over the entire period of work requiring evaluation. However, it is necessary to average separately the distinct periods of work involved when . . . there is a significant change in work patterns or earnings.")

The parties dispute whether Shepard's work patterns or earnings "significant[ly] change[d]," 20 C.F.R. § 416.974a(c), during the years considered by the ALJ (2007 through 2009), and thus whether the ALJ should have averaged Shepard's monthly earnings during those entire years instead of considering merely her earnings during portions of 2007 and 2008. Shepard contends that her earnings were "reasonably stable and consistent" during those years and that she performed the same work for the same supervisor during the same period, and thus the ALJ should have calculated her average monthly income for each year. (Doc. 10-1 at 12.) The Commissioner, on the other hand, claims Shepard's earnings "changed significantly from quarter to quarter," and thus the ALJ properly calculated her monthly income by quarterly fiscal periods. (Doc. 17 at 11.) Neither party submits legal authority discussing what level of "change" constitutes "significant change" under the applicable regulation. In any event, I am not persuaded that Shepard's earnings' fluctuation of "appro[ximately] one hundred and twenty five to two hundred dollars each quarter," as described by the Commissioner (Doc. 17 at 11), or between $500 and $800 each quarter, as documented in the record (AR 133), is necessarily "significant." Moreover, it appears that Shepard's work patterns with respect to her personal care assistant job stayed the same during the relevant period. (*See* AR 29, 34-38, 146-47, 295.)

Most importantly, however, the ALJ did not discuss changes in either Shepard's earnings or work patterns in his decision, and it is unclear why he opted to average Shepard's earnings in the manner that he did. Although significant changes in Shepard's earnings (and thus application of 20 C.F.R. § 416.974a(c)) perhaps *could* justify the

9

ALJ's failure to average Shepard's earnings over the entire period of work, it cannot be discerned from the ALJ's decision or the record as a whole that the ALJ actually applied and relied on this regulation as a basis for averaging Shepard's earnings merely over certain quarters of work. Specifically, there is no finding in the ALJ's decision or elsewhere in the record that there was a "significant change" in Shepard's "work pattern or earnings" in certain months of the alleged disability period as compared to other surrounding months, such that it would be appropriate to apply 20 C.F.R. § 404.1574a(c) to treat these respective periods as "separate period[s] of work" for purposes of averaging Shepard's earnings. Regardless of whether the record might support such a finding, "this issue is one that the Commissioner should address in the first instance." *See Whittaker v. Comm'r of Soc. Sec.*, No. 09-11463, 2010 WL 1416824, at *3 (E.D. Mich. Apr. 2, 2010); *Murray v. Astrue*, No. C06-4065-MWB, 2007 WL 4125836, at *5 (N.D. Iowa Nov. 19, 2007); *Yonts v. Barnhart*, No. 03 C 3420, 2004 WL 1005690, at *4 (N.D. Ill. May 4, 2004) ("The problem is that the ALJ's decision gives no indication [as to how] she applied the regulations . . ., that she ever calculated average monthly earnings, or that she ever considered the other factors specified in [the regulations].").

In sum, I find that, in determining whether Shepard engaged in SGA during the alleged disability period, the ALJ should have calculated Shepard's average monthly income for each year of that period and then compared those averages against the SSA's applicable guideline tables. Alternatively, if the ALJ opted to make his calculations using some other method, including averaging Shepard's earnings over only certain work quarters, which appears to have been the approach he took, he should have explained his

10

reason for adopting that method.  I recommend remanding to the Commissioner so that the ALJ may (a) explicitly consider whether there were any "significant changes" in Shepard's work patterns or earnings during the relevant period; and (b) properly apply the law of income-averaging, as discussed above and in accordance with 20 C.F.R. § 404.1574a, to determine whether Shepard engaged in SGA.  Before making findings on these issues, the ALJ should attempt to garner a more complete earnings record so that he is able to consider all of Shepard's earnings from the alleged onset date of July 23, 2007 through the date of his decision.  *See Rivera v. Barnhart*, 379 F. Supp. 2d 599, 605-06 (S.D.N.Y. 2005) (ALJ's determination that claimant performed SGA could not be sustained because ALJ "did not develop a complete record relating to [claimant's] work history and alleged disability during the [relevant] period").  The record reveals that, at the time of the ALJ's decision, the record did not document Shepard's annual earnings for three quarters of 2009 or any quarter of 2010 (at least one quarter of which had expired by the date of the ALJ's decision in July 2010).  (*See* AR 131-34.)

## II. The ALJ Should Have Considered Whether Shepard's Job Was Done under "Special Conditions."

The ALJ also failed to discuss whether Shepard's personal care assistant job was done under "special conditions."  The applicable regulation provides as follows: "If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity."  20 C.F.R. § 404.1573(c).  The Second Circuit has applied this regulation to mean that "a claimant who works and earns above th[e] threshold [SGA] amount can nonetheless be properly classified as disabled *if that*

11

*claimant performed his or her work under 'special conditions.'"* Moran v. Astrue, 569 F.3d 108, 114 (2d Cir. 2009) (emphasis added) (quoting 20 C.F.R. §§ 404.1573(c)). Pursuant to the regulations, examples of "special conditions" which may relate to a claimant's impairment include, but are not limited to, situations in which:

> (1) [The claimant] required and received special assistance from other employees in performing [his or her] work;
>
> (2) *[The claimant] w[as] allowed to work irregular hours or take frequent rest periods*;
>
> (3) *[The claimant] w[as]* provided with special equipment or w[as] *assigned work especially suited to [his or her] impairment*;
>
> (4) *[The claimant] w[as] able to work only because of specially arranged circumstances*, for example, other persons helped [him or her] prepare for or get to and from . . . work; [or]
>
> (5) [The claimant] w[as] permitted to work at a lower standard of productivity or efficiency than other employees . . . .

20 C.F.R. § 404.1573(c) (emphases added).

The record reflects that Shepard's personal care assistant job allowed Shepard maximum flexibility regarding the times she was required to work, i.e., she was able to make her own hours and switch those hours when necessary, which she frequently did. (*See* AR 34-35, 147.) Moreover, Shepard testified that her employer limited her client assignments to the town where she lived, in recognition of Shepard's inability to "leave town" due to her phobias and panic attacks. (AR 34; *see also* AR 31, 295.) The Commissioner argues that Shepard's ability to schedule her own hours, change her hours, and schedule tasks at certain times of the day (*see, e.g.,* AR 34-36) are general perks of the personal care assistant job and not special accommodations arising from Shepard's

12

impairments. The Commissioner further points out that at least one of Shepard's long-term employers stated in a questionnaire that Shepard had been able to perform her personal care assistant work "[g]enerally . . . [w]ithout [p]roblems," requiring only the ordinary amount of attention and supervision, suggesting that no special accommodations were required or provided. (AR 146-47.)

Significantly, however, both the Commissioner in his motion and the ALJ in his decision fail to give sufficient attention to the VE's testimony at the administrative hearing that:

> [Shepard's] current work represents a . . . unique set of work expectations with an understanding . . . on the part of her employer . . . that she does have some challenges . . . that could quite possibly be difficult to duplicate in other competitive situations and, therefore, . . . *I would describe her current work . . .with her current employer as an accommodated situation.*

(AR 43) (emphasis added). The VE, whose qualifications and experience are more than adequate and have not been challenged by the Commissioner (*see* AR 38-40, 93-94), made this opinion after listening to Shepard's testimony describing her part-time work as a personal care assistant. Although the opinion is not rebutted by other significant evidence in the record (e.g., testimony from another personal care assistant who had similar flexibility in the schedule and manner in which he or she performed the job) and is supported by Shepard's testimony (*see* AR 34-36), the ALJ was, of course, entitled to reject it. However, given the weight of this evidence, the ALJ should have at least explicitly considered the testimony and stated his reasons for rejecting it. None of the cases cited by the Commissioner (*see* Doc. 17 at 14) involved such unequivocal and significant vocational expert testimony, and thus they are not persuasive.

The Commissioner rebuts Shepard's "special conditions" argument by citing to *Moore v. Astrue*, No. CV-09-250-CI, 2010 WL 5055748, at *5 (E.D. Wash. Nov. 24, 2010), among other cases. But in that case, the court noted that the ALJ had found that "[the] [p]laintiff's *statements*" were not credible. *Id.* (emphasis added). These "statements" implicitly included the plaintiff's testimony that he had obtained his job at McDonald's through his girlfriend, who was the store manager and who allegedly allowed him to take breaks and granted him other special accommodations.[1] *Id.* Here, on the other hand, the ALJ found that Shepard's "*statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms*" were not credible. (AR 16 (emphasis added).) There is no indication in the ALJ's decision that he questioned the credibility of Shepard's statements *about the conditions of and manner in which she performed her personal care assistant job*. In fact, there is very little discussion about this issue in the ALJ's decision, and none in the context of his SGA determination.

### III. The ALJ's Improper SGA Determination Was Not Harmless Error.

The Commissioner argues that any error made by the ALJ in his step-one SGA finding was harmless, given that he proceeded with the disability evaluation process, "consider[ing] the medical evidence from the entire relevant period." (AR 14.) This argument would be persuasive had the Commissioner's determination of disability been made at any step of the sequential evaluation process other than step four, or had the Commissioner determined at step four that Shepard was able to perform past relevant

---

[1] Also noteworthy, in *Moore*, 2010 WL 5055748, at *4, the claimant had worked thirty-five hours per week at McDonald's, a very different work situation than Shepard's sixteen-to-twenty-hour-per-week job as a personal care assistant for elderly individuals.

work other than her personal care assistant job.[2]  But the ALJ's disability determination relied on his finding that Shepard's personal care assistant job constituted SGA. Specifically, at step four, the ALJ determined as follows: "[Shepard] is capable of performing past relevant work as a companion/personal care assistant. . . .  [I]n comparing [Shepard's] [RFC] with the physical and mental demands of this work, the undersigned finds that [Shepard] is able to perform it as actually performed."  (AR 18-19.)  The ALJ did not then proceed to make an alternative finding under step five (i.e., that Shepard could also perform "other work" existing in the national economy), or to find that Shepard was able to perform another job that constituted past relevant work.

To reach a finding of not disabled at step four of the ALJ's sequential evaluation, the applicable "past relevant work" must be SGA.  *See* 20 C.F.R. § 416.960(b)(1) ("Past relevant work is work that you have done within the past 15 years[ ] *that was substantial gainful activity* . . . .") (emphasis added).  Here, as discussed above, the ALJ's step-one SGA finding was legally erroneous.  Hence, the ALJ's step-four past relevant work determination, which was inextricably intertwined with the SGA determination, was also erroneous.  The Commissioner cites *Miles v. Harris*, 645 F.2d 122 (2d Cir. 1981) in support of his contention that any error the ALJ may have committed at step one was

---

[2] *See, e.g., Pfeil v. Astrue*, 302 F. App'x 727, 728 (9th Cir. 2008) ("The ALJ's failure to properly analyze the factors relevant to determining whether [plaintiff] engaged in substantial gainful activity was harmless, as his determination [*at step two*] that [plaintiff] had no severe impairment prior to her date last insured was supported by substantial evidence in the record.") (emphasis added); *Reeves v. Barnhart*, No. C 02-01251 MEJ, 2002 WL 31553376, at *15 (N.D. Cal. Nov. 8, 2002) ("[I]t was harmless error when the ALJ concluded that [plaintiff's] work was substantial gainful activity because even assuming, arguendo, that it was not substantial gainful activity, *at step five, the ALJ addressed other work that exists in the national economy Plaintiff can do* . . . .") (emphasis added); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (where ALJ erroneously determined that plaintiff's part-time job constituted SGA, error was harmless because substantial evidence supported ALJ's *step five* finding that "substantial gainful employment . . . existed in the national economy").

harmless. (*See* Doc. 17 at 17.) But in that case, the ALJ's decision was based on "the availability of other substantial gainful employment in the vicinity presented at the hearing by the vocational expert." *Miles*, 645 F.2d at 124. Here, the ALJ did not proceed to the fifth step of the sequential evaluation, instead stopping at step four, finding that Shepard was able to perform her past relevant work as a personal care assistant. Other courts have required remand in situations similar to this. *See, e.g., Eksund v. Astrue*, 343 F. App'x 228, 229 (9th Cir. 2009) ("Because past work must have been done at the substantial gainful activity level to be 'past relevant work' under the regulations, a finding that [claimant] was not disabled at step four was improper, and the analysis must proceed to step five.") (citation omitted); *Stephens v. Barnhart*, 50 F. App'x 7, 9 (1st Cir. 2002) ("Since the ALJ concluded that [claimant's] . . . work as a car wash attendant and newspaper seller was too sporadic to qualify as 'substantial gainful activity,' those jobs did not meet the definition of 'past relevant work' [and] [t]hus, the ALJ's Step Four analysis should have been limited to consideration of whether [claimant] had the RFC to perform his past work as a janitor.") (citations omitted); *Inman v. Astrue*, No. 09-29-P-H, 2009 WL 3711486, at *3 (D. Me. Nov. 3, 2009) (remand required where hotel housekeeper job, as performed by plaintiff, was not SGA "and thus [was] not available to the [ALJ] for consideration as past relevant work at Step 4").

Furthermore, the ALJ expressly considered his improper SGA determination in assessing Shepard's credibility and determining her RFC. (*See* AR 17 ("The records indicate that while [Shepard's] current job is part[-]time, she has earned *substantial gainful activity* at that job during the period in which she alleges disability."), ("Despite

16

[her] longstanding problem[s], . . . [Shepard] has been able to maintain quite *substantial work* between 2003 and 2007.") (emphases added); AR 18 ("[T]he above [RFC] assessment is supported by . . . [Shepard's] activities of daily living including her *extensive work* during the period at issue.") (emphasis added).)  Therefore, it is unclear whether the ALJ would have made the same disability determination absent the erroneous SGA finding, and the Court may not uphold the ALJ's decision based on reasons not articulated by the ALJ and explained by the Commissioner solely on a post-hoc basis. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action") (quotation omitted).

The remaining issues raised in Shepard's motion, including her contentions related to the ALJ's credibility determination and consideration of the treating physicians' opinions, need not be addressed by the Court, as these issues may be affected by the ALJ's renewed SGA determination on remand.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  I note, however, that on remand, if the ALJ proceeds beyond the step-one SGA determination, he should explicitly consider the May 2009 opinions of treating physician Dr. Barbara Raskin, including Dr. Raskin's assessment that Shepard's prognosis was "poor" and that Shepard experienced "[m]arked restrictions" in activities of daily living and "[m]arked difficulties" in maintaining social functioning. (AR 704-11.)  The current ALJ decision refers only to Dr. Raskin's September 2007 and April 2010 opinions (*see* AR 17, 18), which substantively differ from those of May 2009.

## Conclusion

Because I find that the ALJ did not follow the correct legal standards in determining whether Shepard engaged in SGA and was able to perform her past relevant work, I recommend that Shepard's motion (Doc. 10) be GRANTED in part; that the Commissioner's motion (Doc. 17) be DENIED; and that the matter be REMANDED for further proceedings in accordance with this ruling.  Shepard's request that the matter be remanded for calculation of benefits should be denied, given that it cannot be said that a remand for further evidentiary proceedings would serve no purpose.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

Dated at Burlington, in the District of Vermont, this 12th day of October, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).